Thank you, Your Honor. Kevin Terrio for the Plaintiff's Appellants. High schools must provide a level playing field for student speakers. The school district in this case has tilted that playing field in favor of one side of the debate. They have broadly prohibited all negative speech regarding the issue of homosexuality, which effectively eliminates all dissent. This is exactly the type of speech that the First Amendment was designed to protect. And under this broad prohibition on negative speech, even students observing the day of silence in this particular case would be prohibited from saying that those students in this case This is a factual matter. The incident here happened the day after the day of silence. That's correct, Your Honor. So the school had one day where there was debate and discussion on the subject, and your client wore the T-shirt with a somewhat different message that day. Yes, the message on the front was the same. Homosexuality is shameful, Romans 127. On the back, the first day, the day of silence, it said, I will not embrace what God has condemned. On the second day, it said, Be ashamed. Our school has embraced what God has condemned. So is that along with saying yes? It will. Or is it a different message? It's a different – a slightly different message the second day, although that's not the message. That's the question I asked. Okay. I'm sorry. I'm sorry, Your Honor. Yes. Yes, it was. Thank you. So on that day, nothing happened. He was not disciplined. He was not called to the principal's office. Nothing happened. That's correct. So when you talk about the day of silence and, you know, the activities that happened there and that would silence all those activities, that's really not quite accurate. I mean, the school could say, look, we're going to have a day of debate. People are going to be able to say things and express themselves. But then we get back to being a school. We get back, you know, we've had our civics lesson, you know, important to teach people about debate. But the next day after that, we don't want to have debate, right? We want to have less disruption and debate. Obviously, timing is very important. But, Your Honor, the school said, Principal Fisher, in his declaration said that Chase would be punished if he ever wore that T-shirt again, even if he does that on another day of silence. So the issue was not that he didn't do it on the proper day. The issue was the message that he was articulating with his T-shirt. You didn't specifically say even on the day of silence, right? No, he did not. Okay. And the day of silence had just passed. Yes, it did. It would be another year before that. Yes, it did. But he did testify that he could not wear that T-shirt again. Now, on your question of the debate, you say this is a legitimate debate with two sides. Would your answer be the same if it were Equality Day and the students wanted to wear a T-shirt saying blacks are inferior? Send them back to Africa. Would that be also the same kind of debate? Well, there are several facts that are different about that. First of all, the school has a compelling interest in eliminating racial discrimination, number one. And number two, it depends on the context. And even in the context of race discrimination, the Supreme Court has held that the school can't discriminate based upon viewpoint. Your answer is yes, then. Is that right? I can't tell you. First half of your answer seemed to be no. And the second half seemed to be yes. Well, why don't we start out with a yes or no answer to the question? Well, the the school district is able to limit speech that is disruptive. That's common ground. It also. But it must do so in a viewpoint neutral way. So, for instance, I still don't know whether the answer is yes or no. As I understand your question, let's make sure I get it correct, is is it different if they were if the issue was race? And I think the answer to that is no. If the school is acting in a viewpoint discriminatory way. Yes. The school promotes today. I have no idea what he said. I have no clue at all. I apologize. Let me use an example. regular English kid comes in with a T-shirt says blacks are inferior. Send them back to Africa. Can or can the school may the school say you can't wear that T-shirt? Yes or no. That'll understand. You get more complicated than that. I'm going to have a hard time following. Yes, it can. If the if the T-shirt causes material disruption. Yes. I mean, it actually has. They have to wait till there's a race for it. No, they do not. Well, you say if it causes material disruption. So you can wear it until there's material disruption or if there are reasonable facts that lead the school to be able to. You can't have any other facts. These are all the facts. The record is devoid of facts on this point. The kid walks through the door and as he is walking in in the morning wearing this T-shirt, he runs into the principal. The principal says, hey, bud, that being the kid's name, you cannot wear this T-shirt to school today because I, as principal, know that this will be hurtful and disruptive and will cause people to get angry and will disrupt the school day. That's all the facts. So you turn around and go home and take off the T-shirt and put on a paper bag instead of something they can do. So, yes, they can. They can limit the language and the expression on that T-shirt as long as they do so in a viewpoint neutral way. Well, it follows an equality day in which the school's purpose is to say all people are equal. The races are equal. Discrimination is bad or strike. The discrimination is bad. They say it's an equality day. And in protest against or the other side of the argument is blacks are not equal. So they permit one side of the argument, as you describe it, an argument, and they prohibit the other. Well, if I may use an example, and the Sixth Circuit in the Castorina versus Madison School District case held that if the school prohibits a racially divisive symbol like a Confederate flag, it can't also allow a racially divisive symbol from the other side, like a Malcolm X T-shirt. No, that's not the example. It's an equality day. Teaching decency in the schools, teaching democracy in the schools, saying that you should not you should treat all people regardless of their race, sexual orientation, religion, whatever. You treat them decently and equally. That's the school's message. Correct. All right. The next day, someone comes in. Two people come in with T-shirts. One says homosexuality is sinful. The other is says blacks are inferior. Can you ban one or both or neither? The school district can ban both if they're causing material disruption or they reasonably forecast material disruption. Well, the principal says, I believe that it will be disruptive if you cast blacks in a negative way. It'll cause divisions among the races. And I also believe it'll be disruptive if you treat gays as being shameful people because we have gays in our school. I understand. Both acts will be disruptive. Then what? Where are we? Well, if if the school first of all, the school definitely has a compelling interest in eliminating race based discrimination. The Supreme Court has held that. However, it does not have a compelling interest as the Supreme Court does. What difference does that make? What what what interest the school has? We're talking about speech here. Correct. And the fact that the school agrees with the speech or has a mission to promote a particular speech will make no difference at all. Well, you're correct in the in the sense that student speech has a has a there's a protection under Tinker. It doesn't matter whether the school endorses it or not. And that gets more protection than. So your point about saying, oh, well, the school the school has an interest in promoting equality is neither here nor there. It doesn't make any difference at all whether the school likes equality or dislikes equality. Right. Because the school's point of view or the school's mission in that regard, whether it aligns with the students message or not, makes no difference at all. Well, that's true. That's exactly why we keep saying, oh, because they have an interest in promoting equality makes no difference at all. Well, what the school does have an interest in doing is allowing all sides of the debate as long as as long as it's not material, just materially. Yeah. Including put those blacks, you know, using using a racial epithet. They wouldn't be saying blacks, but put them on the backs of the ships and send them back to Africa. That's the point of view. Sure it is. That's right. And if that as the Supreme Court held, even in an R.I.V. versus St. Paul, even in situations where you have racially divisive speech and racially insensitive speech and it's fighting words, which has less protection underneath the First Amendment, the school or the government in general still can't enforce that regulation in a viewpoint discriminatory manner. And that's what they've done in this case. You keep saying it's viewpoint discriminatory, but I don't remember anything in the record that says that people that were that had T-shirts saying heterosexuality is is shameful or heterosexuality is like. Pigs, you know, heterosexuals are like pigs that that that that anybody like that was allowed to parade around campus with the with the record does say is that there were signs, T-shirts and buttons worn by students and teachers advocating tolerance and acceptance of homosexuality. But that's not the that's not the same kind of message. Tolerance is tolerance says doesn't attack anyone. Whereas a T-shirt that says homosexuality is shameful makes a judgment about people's lifestyles or people's proclivities. It is the one is a message about how we should behave towards each other. The other one is a message about a value judgment about somebody else's person. And the equivalent of that, the equivalent of that on the other side would be to say heterosexuals are breed like pigs. Now, that would be the same kind of value judgment. Well, I disagree, Your Honor, because if tolerance if you can advocate tolerance and the opposite of tolerance is intolerance. The question is that the question is not opposite. The question is equivalency. What what the school says it found objectionable about this T-shirt is that attacked other students, that it that it took members of the community of the school community and said something about them and their lifestyles that was offensive. The equivalent saying that they didn't treat your client equally, you'd have to say somebody else wore a T-shirt that attacked other members of the school community. Let's say heterosexuals in the same way. And they were allowed to parade around campus. It is not an opposite. It is not an equivalent T-shirt to say, oh, we think everything. Everybody is equal and we should live peacefully together. Well, that's not an equivalent kind of kind of message. Well, if what is the I guess what I'm struggling with is what is the opposite message? If we should tolerate homosexuality, we should be intolerant. We should be intolerant. He could say he if he'd had a message and said, be highly intolerant of homosexuals. We'd have a very different case. But he is that is speaking to the question of tolerance. Whereas the T-shirt he had actually said something about fellow students. Presumably there are gay students and lesbian students in the school. And he is saying what you're doing is shameful. Well, you don't you don't see the difference between those. Well, they're both negative messages in the school district has said that they would prohibit negative messages. Negative messages about individuals are different from negative messages about ideas. But that is not that is not what the rule says. And that's not what they testified to. They said Chase are the only option that they gave Chase to wear his T-shirt was to join the Bible club. They said, let's do something, say it in a positive manner. But that sort of brings me back to what you did apparently agree that if either of the messages was disruptive, that it could be banned. That's correct. That's correct. But there was no disruption in this case. Well, now the principal comes in and says, you know, I know about schools. I know about kids. We have kids of all kinds here. This message is going to cause disruption. And then he gives a little bit of evidence about what happened last year, that there was some kind of minor disruption. But it's the school's judgment that these are disruptive activities. Is that really what your issue is with this case? If you say it's not disruptive, gays are going to say, oh, well, these are just sort of these right wing lunatics. Nobody's going to pay any attention to them. So it's not it's not going to be disruption. Well, first of all, and then the other side says, yes, these kids are going to be, you know, they're young kids get wounded deeply. There's going to be divisions in the school. We're going to have an unhappy, unhealthy educational community. Is that what the real issue is here? Whether that's disruptive. Well, that's exactly what the school district in Tinker said. And this in the Supreme Court said that that wasn't enough. It said that fear or apprehension of disturbance does not is not material disrupt. But it's a little different from Tinker. Tinker, they were wearing armbands and they were making a political statement about about Vietnam. They weren't really attacking anybody on campus. They were not really saying anything negative about individuals on campus. You do agree. You have to agree, don't you? No, I mean, maybe, maybe you don't. That a message that speaks to an idea is different in terms of potential disruption from a message that attacks individuals. Well, and I and I think that's exactly what we have here is a message that speaks to an idea of homosexuality. And that was a topic that was included in the school district was allowed to be discussed. Any negative views of that topic. And that's classic. But there are people who are homosexual. So when you speak negatively about homosexuality, you're speaking negatively about the people who are homosexuals. You're saying they're shameful, their practices that are inherent to their life. They are shameful. That attacks the people saying the Vietnam War is good or bad, doesn't attack other students. Well, the the Supreme Court recognized that there were some facts in the record indicating, as a matter of fact, the school district in that case said that we have students here who have lost people in Vietnam and you're discrediting and might upset them discrediting. You can upset somebody with attacks on ideas. Yes. I mean, somebody can attack an idea and someone else can be very upset. You can say John Kerry is not a war hero and that can upset some people. Sure. But that's not an attack on the people who believe he's a war hero. Those kinds of political debates are normal, legitimate and don't involve the very essence of the person. When you say this person is no good or he's shameful or he's a sinner, you are attacking the person, not just an idea. Well, I believe that Chase Harper said that if he would have said it would have been different, a little bit different in essence, if he would have said homosexuals are shameful. But that's not what he said. He said homosexuality is shameful. And there is a meaningful distinction. I think there is some distinction there. But how can you have homosexuality without homosexuals? Well, Your Honor, what I'm saying is there's no such thing as homosexuality in the abstract. The difference between homosexuality and homosexual behavior. So you mean if I said Christianity is shameful, that's different from saying Christians are shameful? I mean, I'm just wondering. Well, first of all, I don't think that there's a big difference. Not that I would say either. I'm just. Right. I don't think that there's a bit. First of all, students should be able to say that if they want to. Well, we're talking the question of whether those two things are different. And somebody can say Christianity is shameful. Now, you don't think that is a comment on all people who consider themselves Christian? You don't think everybody who is a Christian who hears that kind of statement would feel that that is something being said about them? They may. And then that's exactly what the Supreme Court. You wouldn't. There may be some that don't, but it doesn't really matter because the discomfort. What kind of a high school community do you think there would be if you were wearing T-shirts all the time in the school? Christians are shameful. Jews are shameful. Muslims are shameful. Do you think that you would have a healthy school if the students were coming to school wearing those messages? Well, Your Honor, it all you have to take it all into context. And I think the answer is if it's causing material disruption, then they should be able to limit that. But you have to wait. Don't you know that that would cause material disruption. If you had groups of kids were saying Mexicans are shameful. Jews are shameful. Christians are shameful. Women are shameful. Not necessarily. It depends on the context. For instance, if if they have a day where they're advocating, for instance, in the situation of advocating. Whether it would be disruptive. Is it would that be disruptive if you had those in the school community? You had kids going around the school wearing those those T-shirts and forming groups. You know, one group or one said Jews are shameful. The other one said Christians are shameful. Blacks are shameful on that level. Yes, it may very well be disruptive. But that's not what we have here. We have one student wearing one T-shirt. And we have a situation where the other side of the debate was allowed, but there's was not. And that's classic viewpoint discrimination that the Supreme Court did. It's a concern, meaning to you. Let me ask you, what exactly is the relief you are seeking for your client? If if you were to if you were to prevail or, you know, you say you're claiming this record and then the injunction. What exactly? How would this injunction read that you are seeking? Well, I see my time is up. No, don't worry about the time. This is not moot court. I want to make sure that I that I had the permission to answer. Yeah. First of all, that there would be a preliminary injunction that would issue that would permit him to wear his T-shirt the next time that a day of silence occurs. Number one. And number two, a preliminary injunction on the school's policies that prohibit prohibit negative and offensive speech because those policies are overly broad and they violate First Amendment principles. They effectively eliminate one side of the debate. As a matter of fact, the Supreme Court held in West Virginia versus Barnett that elimination of dissent is the first step towards exterminating the dissenters. It's a characteristic of all totalitarian regimes. I don't think there's much danger that the Christian majority is going to be eliminated as a result of this. Well, Your Honor, unpopular speech, which the school district has characterized as that. And all you need to do is look at the last page of their brief to see that it was the view is the religious viewpoint of Chase's speech that was the problem. And that's the kind of. It would be a problem whether it had the religious attachment or not. It's the it's not the fact that it's I mean, the role of religion in this is sort of a justification for this. I agree that the religion is not the issue. But the issue is they disagreed with his particular viewpoint. And that's exactly the kind of speech that the Supreme Court said that this that first that is protected by the First Amendment. And the school can't censor just because of the discomfort that goes along with an unpopular viewpoint. Well, the difference is you say they can censor if it's disruptive, but not if it's discomfort. That's correct. So the issue here really is, does this kind of speech create discomfort or disruptiveness? Right. As Tinker phrased it, is it a mere disturbance? Is it just starting arguments, causing hostile remarks or having threats by other students, which was the case in Tinker? And I even had a teacher's class practically wrecked because the students were discussing Mary Beth Tinker's armband instead of staying on task. Court said none of that amounted to material disruption. Let me just go back to my original question to you, then, if it had been a racist attack on blacks in the schools or on Hispanics in the schools. And we have a lot of both largely Hispanics these days in our schools. If it had been a racist attack on Hispanics, would that be enough for you to say it would be disruptive or would you need more evidence for that? When the school district said, look, you know, wearing anti-Hispanic T-shirts causes disruption. We know that. Would that be enough? That would be enough to show disruption. But there would be one more question that needed to be asked. And are they enforcing that in a viewpoint neutral way? Well, no, they say we've had equality days saying we believe in racial tolerance. All students should treat each other equally. And then they come back later with these T-shirts. Would that be disruptive? Well, it it may very well be disruptive. Yes, Your Honor. But it's not with gays. It may be disruptive. Yes. The school district could prove that Chase's T-shirt was disruptive. The Hispanics was not. Could they prove it in the trial? My question to you was the students come in wearing these anti-Hispanic T-shirts and the principal says that is disruptive. I'm an educator. I know we have a lot of Hispanic kids here. I know what the reaction is going to be. We're going to have another race war. Would that be all right? Or does he say that you need more than that? Well, yes, because even if it's material, materially disruptive, the school has to enforce that prohibition in a viewpoint neutral way. That's so in order to comply with the viewpoint neutral is the same as in this case. You've had the same kind of equality day followed by the T-shirts. Let's take another example. Let's say it's an anti-gang day and the next day somebody wears gang colors. Do you think that's OK? Well, that certainly is going to be protected speech, but where it doesn't, whether the school is justified in censoring, it has to do, first of all, whether it's disruptive. Number two and number three. Well, they know it's disruptive and disruptive fast. I mean, but but you can take that on the record here. You know, gangs, they in fact, as part of the school district policy here, it's an anti-gang policy. You can't wear colors. So they have an anti-gang day. You think that opens it up to violations of the school policy? Well, there's certain. Yes, I do believe that students may be not be able to wear colors because that's a that's a content neutral restriction. But to say that voice their opinion, that gangs ought to be allowed in the school. Yes, that would be protected speech. Now, you have to pardon me because I've got a little bit of laryngitis, but I don't understand exactly why we're here on the you're here on a preliminary injunction in your pleadings. You said you asked for a preliminary injunction so that stopping the defense from violating his constitutional rights by selectively banning religious expression at school fairly broad. Today, you say he wants to wear the T-shirt on the day of silence. What are you asking for? Well, we're asking for two things. And if I if I only said the day of silence, I may have misspoken. What we're asking for one, the an injunction stopping the school from discriminating based upon viewpoint and their prohibition on negative views. And number two, an injunction specifically saying that Chase should be allowed to wear this T-shirt. But this is a preliminary injection. You're going to obviously the record's undeveloped. The school claims that it's disruptive and they can prove it. You claim it's not disruptive and you can prove it. We have all sorts of facts that are undeveloped. A day of silence isn't planned for another year. School's about to be out. Why do you need a preliminary injunction? Well, your honor, I don't think that the facts are in dispute. The real question is what the facts mean. And and we have a day of silence coming up in in April in order to get a result and get through the April 2006. Yes. You missed one April already. I think that's right. Yes, that's right. We've already missed one. So we're it's important to get this case resolved as soon as possible. Otherwise, Chase, who is going to be a senior next year, will never again have the opportunity to express his opposition to the day of silence. Probably if this had just gone through the court district court to a permanent, you would have gotten a ruling already. Well, that depends upon the level of discovery, your honor. And of course, we were certainly trying to get a ruling before this year's day of silence. And that certainly wouldn't have happened by then. Thank you. One final question. If if there were if there were no day of silence, that was that was sponsored by the school. What happens to what would happen to your argument? I'm sorry, what else? Assuming that there's no day of silence, what happens to your argument? Well, if homosexuality, I guess what you're assuming is, is that the topic of homosexuality is excluded by the school. It's not excluded. It's just not it's not raised by the school by by having a tolerance day. Well, I think the school would still have a problem with eliminating one viewpoint on homosexuality if they allow others. If they it doesn't mean they don't need a day of a day of silence in order for students who are advocating equality for homosexuals to be able to express their view. And they shouldn't. They should be able to express their view as much as they want to at any time, as long as it's not disruptive. And by the same token, Chase ought to be able to express his view. And that's the very point of our argument and why we think a motion for preliminary injunction is necessary, because the Supreme Court, I mean, I'm sorry, the district court specifically held that the school can censor Chase's speech based upon viewpoint. And that's in direct contradiction to this Court's holding in Prince v. Jacobi and, of course, the Supreme Court holding in Rosenberger. Thank you, Your Honors. Thank you very much, counsel. We'll give you a minute or two for rebuttal. If it please the Court, Jack Sleeth, appearing on behalf of the Poway Unified School District. This is a case involving important rights on both sides and involving good people struggling to do the right thing under difficult circumstances. I think it is a case where. You know, speech isn't always necessarily limited to good people. Bad people have the same right to free speech as good people. So it really doesn't matter whether their motives are good or not. They either have a right to make the speech or they don't. It's absolutely true. In this case, speaking particularly to the to the simile of race, if the if the statement was made that some particular race is shameful, would it be the same as the statement that was made here? I think this statement is actually worse. The reason that I think that is that there are young people in this school who are still trying to form their own identity, trying to come to some understanding of their own relationship to other people. If a student is in a particular racial group, there is a support system for that person. If his race is attacked, he has other members of his own race to speak with about that. There's some support system. This is all interesting philosophizing. But what in the record supports any of this? School administrators have an obligation. Is a deposition or is there something in the record that tells us that people developing, you know, have support systems? I mean, I don't remember seeing this anywhere in the record. It's not in the record. So what good is it? I'm sorry, I didn't hear that. That's right. These are nice theories and maybe they're true or not. But to me, this sounds like psychobabble. Well, I'm sorry, I don't see the difference. And I don't know if you can point to me to something in the record where this is articulated as a basis for the distinction of the fine, but I could I could make us nicer speech going the other way. So let me let me try. So we're even. So why don't we talk about what justified singling out Harper? Chase Chase. Right. Harper. Right. When nobody else was sent to the to the principal's office, when they were duct tape on their faces and send all sorts of messages and also the point of view, the one guy they picked to send to the principal's office is this guy. Why? Because what's what's what's what is there about this speech? That's that's any more different inflammatory than everything else that was said on the subject. Because his statement is contrary to the mission of the school as established by the law of the state of California. Doesn't matter. It doesn't matter what is contrary to the mission of the school. He's not there to speak for the school. The school could speak for itself. The fact that the fact that the school disagrees with him cuts noise at all. First Amendment purposes. He's entitled to speak in ways that are contrary to the mission of the school. Well, he certainly. I'm not sure that he is. The Ninth Circuit says that the mission of the school is an important part of the consideration. He said he says education is terrible. Teachers are a point ahead of idiots. He could say that. Yes, he can. OK. So the fact that it's contrary to the mission of the school is teaching. I mean, there's nothing more fundamental than teaching. The fact that the school happens to disagree with him or is contrary to its mission just cuts noise whatsoever. You've got to fall into one of the categories. You either have to. It has to be offensive speech. You know, Cohen's jacket. Right. This is a classic example. And I don't think you fall into that. Or it has to fall on a tinker. It has to be disruptive. And there's no evidence whatsoever of disruption in this case. None at all. But there's another piece of instruction in Tinker. Tinker says if it offends the rights of others, it's prohibitable. It doesn't just say disruptive. But people are offended by everything. You know, you're surprised by how many people how many things people tend to be offended by. It doesn't say people are offended. It says in Tinker offends the rights of others. So if we find some legal right. How offense what. So what rights is being offended here. Well, the State of California and the Ninth Circuit have agreed that sexual orientation is a protected classification. This attacked a legally protected classification and the right of an individual to be free from harassment. Chase Harper wouldn't be able to wear this T-shirt to work when he gets a job under Title VII. The employer would be privileged to discipline him for the conduct. And if he refused to take off the T-shirt under Ninth Circuit established case law, he could be fired. But state law also gives Chase Harper a right to speak just as he would in a non-school environment. California law is much broader than federal law in that regard. State says explicitly, quite clearly, that the rights to speak in school are just like the right to speak outside the school. The right to student is no more limited than the rights of any other citizen outside the school. Right. I think there's California Education Code Section 48950, which is familiar with that section. I am, Your Honor. And the paragraph says says except for harassment. The D sub paragraph in that statute says except for harassment. And this conduct is. What do you mean by harassment? Harassment is anything that's offensive or somebody takes offense at harassment? No. Okay. It is serious or substantial conduct that attacks a protected class of people. Actually, what does it say harassment? In the D sub paragraph of 48950, nothing in this section prohibits the imposition of discipline for harassment, threats, or intimidation unless constitutionally protected. School administrators reading this would practically need a law degree to figure out what unless constitutionally protected means. But it's a fairly clear statement that. What's so hard about that? There was nobody came to fisticuffs. He wore his T-shirt half a day or a good portion of a day. He wore a T-shirt entire day the previous day. Yes. And then he wore it part of the day. And other than people trotting class, there was no evidence at all. Nobody walked up to him and say, boy, you know, I want to hit you. There was no evidence that people in his wake were at each other's throats or anything. There was no evidence of gay students running to the nurse and saying, oh, my God, I'm swooning. I feel so hurt. Nothing like that. No, there isn't. It's just a bunch of educators in a tizzy saying, oh, my God, this is horrible. We've lost our kids, our kids can't stand it. You know, there are kids that are much more, much less fragile than you imagine. Well ---- But there's simply no evidence or no evidence whatsoever that during the time that he was a teacher in the school that any disruption occurred. Right? Right. There is nothing on the record. Yeah, but there was some disruption. There was. I'm getting to that. There was conversation. There was conversation. There was the beginnings of a disruption. And the law says that an administrator who can reasonably forecast a disruption has the right to stop the conduct. What there was was people discussing things in class rather than working. I'm sure that's an unheard of event at Polway High School, right, where people are schvartzing in class instead of paying attention to the teacher. It must be extremely rare in that high school.  I think it happens all the time. We have one other fact, and that is the year before, there was an altercation that the principal felt it necessary to break up. We don't know the details of that altercation because the record hasn't been fully developed, but the principal knew that he had an altercation the year before at the Day of Silence. He knew that tempers were high, and there was the beginning of a disruption on this particular night. Well, but that cuts very little ice because that was a disruption during the Day of Silence. It could have been as a result of people making pro-gay statements or anti-gay statements. We don't know anything about it at all. And we do know that he wore the same T-shirt with substantially the same language the day before in this very high school just 24 hours earlier for the entire day while people were all discussing and having arguments about it and all that. And nothing happened. Nobody went home with a nosebleed. There was no breaking of glass. There was no people marching out of class. Nobody filed a charge of harassment or anything of that sort. That's true. So why escalate this? What's the point of—what evidence, what anchor in reality is there here for suggesting that this was any more offensive than the dozens and scores of things we've seen on the Internet and on television and listening to radio and in the newspaper these days? Well, I think school administrators have been taught that harassment on the basis of sexual orientation is wrong. You keep using the word harassment. You said that if an employee wore this T-shirt to the workplace, in the workplace, under California law, that that would constitute either, I don't know, a hostile work environment or harassment. Is there a California law that states that an employer has the right to ban this type of conduct as harassment? There are two fairly recent Ninth Circuit cases, both employment under Title VII, cited in our brief. Bodette and Peterson, those two cases, the employer disciplined the employee for statements about the religious prohibition against homosexuality, and the employee refused to take down the message or stop the message, and the employee was disciplined. That makes it fairly clear to employers that sexual orientation and harassment is illegal. I'm sorry. I got lost in that. All right. Well, there are a number of distinctions between those cases. No, no. But tell me what those cases found. Peterson. This is a case where the employer told the employee, take down the message, and the employer was said he's entitled to do that. The employee said, I have the right to put up my scriptural passage. And the employer won. And the employer won. Okay. But there was no provision like 48-950 that applies to employers. Well, I think that 48- No, I'm just saying this is a factual matter. There was no provision like 48-950 that applies to employers. That's true. There's a provision that governs the relationship between school and student, and it says students have these rights. Whereas in the employment context, we're told the employer can say, look, we don't want you doing this on the workplace, and there's nothing that says that they're required to allow that to happen. Well, I think- Neither of the cases said that that was harassment, did they? The flip side of both of them. No, no. But neither of those cases dealt with the question of whether or not the employer is held liable for harassment because of that speech. That was a situation where the employer said, look, take off the shirt or remove the message, and the court said, yes, you're entitled to do that. That's true. Okay. This was not a case where having the message made the employer liable to a third-party employee. The employees in both of those cases sued because they thought their rights had been violated. I understand, but they had no rights like 48-950. That's right. Employers simply said, look, I want to avoid the trouble with my other employees, or I disagree with the message. I don't think it's a nice message, so I'm making you, as my employee, I'm making you stop talking about that. I think, Your Honor, it's more likely. No, no, but that's what happened, right? Well, I think it's more likely they said if we don't stop this, we'll be sued by our other employees. They may have felt that way, but is there any case that says that an employer is liable if an employee wears that kind of message and the employer doesn't stop it? There's no case like that. But there will be. There's certainly no case that says when the employer has no right to make the employee stop, the employer will be held liable. If the employer has no right to make the employee stop issuing the message or presenting the message, that the employer is nevertheless liable. The employer would be liable if he didn't stop harassment. If he unless he were not entitled to stop it. Unless it was not entitled. And we have here we have a provision here that says that when it comes to students, students, the students who may not stop the speech. This brings us back to my question to you, which is he isn't they are entitled to stop it if it's harassment. And the question is, is it harassment for fellow employees to wear T-shirts that are racial or religion, anti-religion, anti-race, anti-gay? Does that constitute harassment in the workplace? Absolutely. And what authority do you cite for that? I would cite that either California state law under 12 940, the government code or Title VII. Title VII prohibits. No, you can't title VII. Title VII merely defines harassment as a form of discrimination. You've got to come up with a case. You've got to come up with a case that says, look, employee on his own has a message. I don't have that case. But isn't it logical that if we have a definition in Title VII that says. You want to call it harassment. OK. One could just as well call it speech. What is the definition of harassment? Is there a definition in the code? Yes. Well, is there a definition in the code of the definition in the case law of either in the case law or the code? Judge Kaczynski said you have to. You can't just say it's harassment. My question to you was, does X constitute harassment? You said yes. It needs to be conduct directed at a protected classification, which is either pervasive or serious. There are no cases to tell you what that means. Well, there are a whole bunch of cases out there that tell us what that means. But there's no case directly on point on this particular issue. Well, we can do away with all the supervisor cases. Right. All the supervisor cases. We can all do away with all the quid pro quo cases. Yes. So, you know, Ellison versus Brady and all that line of cases are not applicable because those are situations where the employer or the supervisor ties to engages in harassment by either either forcing the employee to to to to look at things or read things using supervisory power or does a quid pro quo. So, you know, basically he's asking for sex. That's harassment. What we have to look at are the employee cases, the fellow employee cases, the cases involving statements by fellow employees. And don't those cases on those cases pretty clear that this isolated statement by one employee is not enough. What you have to have is pervasive conduct by a whole group of employees, something so that poisons the environment. There's so much of it you can't turn anywhere except, you know, your face with a wall. Cases where the Tucker's use foul language and, you know, this is the lady Tucker. And she, you know, they're always pinching her bottom or, you know, making comments about her breasts or, you know, some of that stuff. That's that's harassment. One kid with a T-shirt is not harassment. On the first day, it isn't pervasive. On the second day, it isn't pervasive. At some point it becomes pervasive. Well, I guess that's the question. I guess if you get enough students, then maybe you have a different problem. But how do you justify do it? How do you justify disciplining the first students? It doesn't mean maybe he may be the only one. There's no evidence that this is something that's going to become contagious, that other students, you know, you have to the next day and for the next day and eight the next day. Well, I'm going to bet that if you let this go, there wouldn't be more than two or three other students, if any, that would do this. Wouldn't that be pervasive for a for a for a 1,200 for a 1,200 student high school? I can see an employee, a teacher suing because the students were permitted to wear those T-shirts. I can see another student suing under Title IX because the district. Would they have a prayer of winning? That was just one or two students. How big is this? 1,200. Usually in California, the 12 to 1,500 of these high schools. Yes. Yeah. So. So one or two or three students in that many wearing that kind of T-shirt. I think it would be a very difficult time saying that's harassment. Then we need to craft a rule for school administrators so that they know that they permit this for a certain amount of time. But at some time they stop it and they need to know what that rule is. You want a rule that would say it's all right if up to 10 students wear it. But if 10 or more wear it, then it could be bad. It would be the Sodom and Gomorrah measure. You know, just like Abraham was able to talk God down to, you know, just 10. You know, if you get down to that number, you're OK. Yes. If it were for God and Abraham, it's OK for us. If it was good enough for Abraham, it's good enough for me. I would like to see a rule that I can teach to school administrators so that they know what to do when this happens. And what we have right now is a sliding scale. And they do know that an attack, a statement against a protected classification is suspect, at least. And they do know and they knew enough to say it. And it's in the record. If you said that in a positive fashion. We're not really talking about punishing them. We're going to talk about the injunction. I don't think anybody's seriously talking about damages here or substantial damages. I don't know. Maybe my colleagues agree on this. But I think the real question is the injunction. And I don't think anybody, maybe not even plaintiffs, but I don't think there's any doubt about the good faith and the difficulty of the school authorities. And the genuine and difficult position they find themselves in when a case like this arises. So we're really talking future content. You know, the very question you want to have answered, you know, how should administrators act? And in a sense, by looking at the injunction, we're telling administrators, you know, here we have the best guidance you can. You have three judges telling you what you should be doing. Best guidance will be when you get nine justices who tell you. Oh, no. Oh, no. Oh, no. That's higher. But this is better. I would be happy to have any guidance at all. Well, we'll try to give you some. Judge Kaczynski may be able to give you a number of how many people can wear T-shirts before the school administrators can act. Or it may be an imaginary number. Or we may find a different rule. It says either everybody can wear shirts that offend or collide with the rights of others or that nobody can. There are a number of possibilities. Well, we may not decide the question at all because there may be all kinds of procedural reasons. We don't reach the merits. But some somehow sooner or later through the court system, I'm sure you'll get a satisfactory answer. Thank you. Thank you for the opportunity to respond, Your Honors. First of all, even if the harassment statute, state harassment statutes, applied, they cannot trump free speech rights under the Supremacy Clause. The Supreme Court held in Boy Scouts v. Dale that a state's interest in eliminating discrimination based upon sexual orientation does not justify restricting free speech. I think that's an important point. Also, those harassment statutes, specifically 422.6c. Well, it affects freedom of association. Freedom of expressive association, Your Honor. It specifically held that. And I'm sorry, is that? No, no. Go ahead. And the state also 422.6c says that, and I'm talking about the California Code, says that pure speech does not constitute harassment unless it's accompanied by threats of violence. And we don't have that here. And finally, just to sum up. You mean pure speech? Under California law, you believe the answer to my first question. Send the niggers back to Africa. That's pure speech. No threat of violence. The school could not ban that. Well, first of all, I think it could be inferred that that's a threat of violence to physically remove somebody. No, no. They say you should. The state should do that. That sounds like physical violence to me. Well, how about niggers go back to Africa? So, you know, you're supposed to do it on your own. Not that anybody is forcing them, but this is an encouragement for them to leave. How about that? Just so we get past this. Obviously, that's a very difficult case, Your Honor. Pretty easy, I think. Yeah. I mean, if the school can't ban that, we're. If they can't ban that, then what I'm trying to. Yes, they can ban physical. They can ban harassment that results in physical harm to people. They can ban. This wouldn't cause physical harm to anybody. But I think there would be a fair prediction that if you had people wear messages like that, there would be anger. There would be anger among the students. It might come to physical or might not come to physical, but there would be such tension and anger and unhappiness that it would interfere with the school mission. Yeah, I think this. No doubt about it. I think that falls in the same classification as the Confederate flag. Yes. Well, what you have in the record here is and it's it's incomplete. Obviously, we don't know what happened. We had an incident the year before where there was a physical altercation or some kind of altercation. We don't know what it is. We have the school saying that Chase was involved in an intense confrontation. He says it was peaceful. That's a factual dispute. So we just have an undeveloped record on the point. First of all, if, for example, the altercation prior had been a serious altercation, if it's proven, then that changes it, doesn't it? It changes it if that. Well, first, we don't change it to the extent that they enforce a viewpoint neutral restriction. At most, that justifies restricting the speech surrounding the day of silence, not just one side of the debate. And secondly, as I see it, this really isn't about the day of silence because the discipline came the next day. He wasn't disciplined during the day of silence. True. Well, that's true. But the reason why it's about the day of silence is Chase's speech. Go ahead. I'm sorry. No, no. Chase's speech was definitely in response to the day of silence. That's clearly in the record. And that's why he chose to. Actually, what you the reason it's relevant is because the violence happened on the day of silence. Well, and that makes it relevant also, Your Honor. But that justifies restricting both sides of the debate, not just one. But your injunction, you want him to wear it each and every day, right? That's what you're asking for. You want him to be able to wear a T-shirt each and every day, as I understand it. I mean, earlier you said your complaint asked for a broad injunction. Today you said he just wants to wear a T-shirt on the day of silence or have a viewpoint neutral day of silence. I don't know what you're asking for, particularly with your preliminary injunction. I'm not sure what the district court assumed you were asking for. Well, what we're specifically asking for with regard to a preliminary injunction is that he be able to wear his T-shirt on the day of silence. And the reason why we've made it that narrow is because it is a preliminary injunction. But the odd thing is, is it clear that he wouldn't be allowed? I mean, he was allowed to wear his T-shirt on the last day of silence. Absolutely, it's clear. In Principal Fisher's declaration, he specifically said that if he wore the T-shirt again, he would be severely disciplined. Including on the day of silence? Any day. Was he specifically asked about the day of silence? No, Your Honor. No. So what we have is you have a day of silence. He wore his T-shirt. He didn't receive discipline. He wore it the next day and he had discipline. We don't know from this record whether or not people are allowed to wear the duct tape the day after the day of silence. We don't know anything about that. So we don't even know if there's a viewpoint discrimination the day after the day of silence. What we do know is that there was no viewpoint discrimination against your client on the day of silence, right? He didn't suffer. Well, the reason why that they've said, well, they've said that this negative viewpoint, this particular T-shirt, is not allowed to be worn. Right. It's not allowed to be expressed. And they didn't make a distinction between day of silence and not day of silence. Sounds to me like you're on the verge of settling this case. You're really down. That would be wonderful. I'm serious. You're down to a single day. And that is a day next April and the question is whether or not he will or will not be allowed to wear this T-shirt on that particular day. It seems to me that, you know, in the next hour or so you can work this out. Your Honor, that's exactly right. That is that portion of the injunction that we're asking for. We're also asking for a preliminary injunction on the broad policies prohibiting negative and offensive speech, which are clearly unlawful. Yes. We're in your complaint. And I'm not sure what the district court had in front of it and what you're asking for relief here. What you asked for was for violating plaintiff Chase Harper's constitutional rights by selectively banning religious expression in school. And they said they would allow religious expression. They wouldn't allow this particular type of state. All I'm suggesting to you is that you're asking for different forms of relief as it changes from the oral argument from down from the pleadings. If I don't know if you're asking for T-shirts, you want him to wear T-shirts every day. If we're just down to the day of silence, that's a whole different matter. Well, Your Honor, the reason why that we are willing to narrow it at this point to the day of silence is in order to be able to get him to respond by the next day of silence, because that's specifically why he did. But the complaint is much broader than that. Well, sure it is. And I understand you want to talk in broad philosophic terms. But in reality, if we're down to the day of silence, your viewpoint discrimination argument is stronger. If we're talking about a policy the day after, you don't have any evidence in the record about viewpoint discrimination on non-days of silence. There's nothing that says that, at least as I've seen in the record. Well, I disagree. First of all, the ‑‑ thank you. The declaration of Joel Ryan specifically says that throughout the year that he has perceived an allowance on the part of school officials, a speech in favor of homosexuality and a suppression of speech in opposition to homosexuality. And that is found at, I believe, page ‑‑ Is this the rainbow patches or something? That is part of it. Yes, he definitely mentioned that. He mentioned it in other signs and forms of speech. But the bottom line is the school's obligation in this instance, as this Court recognized in Hills, the school's obligation is to educate the audience, not censor the speaker. And I think in this particular instance, if they can avoid censoring speech or censoring the speaker and allow important free speech rights to go forward, they will do a much better job of furthering their purpose of educating kids. Thank you, counsel. Thank you. Thank you both. Would you like to take a day or two to try to settle this case? Well, I think you're only talking about what you're willing to get in a preliminary. You're not saying that you're satisfied in the entire underlying case if there's a resolution of what happens on the day of silence. That's correct. I'm talking about the appeal, settling the appeal. The only thing before us is a preliminary injunction. That's correct, Your Honor. Are you proceeding in the district court now? Yes, there is actually a motion to amend the complaint pending before the district court, but no discovery has taken place. You know, that's generally a mistake, I think, in waiting for the Court of Appeals to decide preliminaries instead of proceeding with the litigation. You could have been far closer over this past year. You would have been proceeding in the district court. But anyway, you didn't. Well, you'll let us know if you settle the case. Thank you, Your Honor. Thank you. Court will take a short recess before we hear the third case on the calendar. All rise.
judges: Reinhardt, Kozinski, Thomas